18 P.3d 138

**Billie RUELAS, by her Guardian Ad Litem, Robert Fleming, Plaintiff/Appellant,**

v.

**STAFF BUILDERS PERSONNEL SERVICES, INC., a foreign corporation dba Judy's Nurses; ATC Healthcare Services, Inc., a foreign corporation dba Judy's Nurses; and ATC Services Incorporated, a Georgia corporation dba Judy's Nurses, Defendants/Appellees.**

No. 2 CA CV 00-0005.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 30, 2001.

Reconsideration Denied Feb. 21, 2001.

Review Denied May 23, 2001.*

* *Chief Justice Zlaket and Justice Feldman voted to*   *grant review.*

Law Office of Carter Morey, by Carter Morey, Linda S. Sherrill, Tucson, for plaintiff/appellant.

Quarles & Brady/Streich Lang, LLC, by Timothy J. Thomason, Kevin D. Quigley, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

¶ 1 In the course of receiving an enema while a patient at Pima County's Posada del Sol Health Care Center, appellant Billie Ruelas was abused by nurses provided by appellee Staff Builders.[1] On appeal, Ruelas challenges the trial court's grant of summary judgment to Staff Builders on Ruelas's claims against it for vicarious liability, punitive damages, and negligent hiring/retention.[2] We affirm because the nurses were lent employees under the control of Posada del Sol while administering the enema and because no genuine issue of material fact exists as to Ruelas's negligent hiring/retention claim.

## BACKGROUND

¶ 2 In reviewing the grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, ¶ 12 (1998). And we independently determine whether there are any genuine issues of material fact and whether the court properly applied the law. *Toy v. Katz*, 192 Ariz. 73, 85, 961 P.2d 1021, 1033 (1997).

---

1. "Staff Builders" refers collectively to Staff Builders Personnel Services, ATC Healthcare Services, and ATC Services Incorporated.

2. Posada del Sol and the individual nurses are not parties to this appeal.

¶ 3 On November 9, 1994, Staff Builders purchased a staffing agency that contracted with Posada del Sol to provide nurses to cover staffing shortages. On November 20, Staff Builders sent several of its nurses to Posada del Sol. Posada del Sol instructed two of those nurses, who frequently worked at the facility, to give Ruelas an enema. During this procedure, the nurses abused Ruelas.

## VICARIOUS LIABILITY

■ ¶ 4 Ruelas claims the trial court erred in finding that the lent employee doctrine precluded Staff Builders' vicarious liability for the nurses' misconduct. A lent employee is employed by a general employer and is "lent" by the general employer to a special employer for certain work. 27 Am.Jur.2d *Employment Relationship* § 6 (1996). Here, Staff Builders is the general employer that employed the nurses and Posada del Sol is the special employer.

■ ¶ 5 "[A] general employer is vicariously liable for the tortious conduct of a lent employee only if the general employer has control of or the right to control the performance of the lent employee's work." *McDaniel v. Troy Design Services Co.*, 186 Ariz. 552, 553, 925 P.2d 693, 694 (1996). *See also Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 136, 65 P.2d 35, 37–38 (1937) ("Control or right to control determines liability."). Although both the general and special employer may have some control in different aspects of their relationship with the employee, the focus for liability purposes is on which employer had control of the details of the particular work being done at the time of the injury-causing incident. *See McDaniel*, 186 Ariz. at 556, 925 P.2d at 697 (citing *Hartford Insurance Group v. Mile High Drilling Co.*, 96 Mich.App. 455, 292 N.W.2d 232, 235 (1980), for proposition that "test is whether *in the particular service loaned employee is performing* he continues under control of original employer"); *see also Lee Moor*, 49 Ariz. at 133, 65 P.2d at 36 (in holding employer vicariously liable under respondeat superior, "it is essential to show the one committing the wrong ... was *in the doing of the act* the servant of the person attempted to be charged") (emphasis added);

Restatement (Second) of Agency § 227 cmt. a (1958) (whether general or special employer liable depends on specific act in question). A lent employee, therefore, may be the servant of the general employer as to some acts and of the special employer as to others. *See Lee Moor*, 49 Ariz. at 135, 65 P.2d at 37; Restatement (Second) of Agency § 227.

¶ 6 In *McDaniel*, the court's majority held that the general employer's "control over the administrative aspects of [the lent employee's] employment is insufficient to subject [the general employer] to vicarious liability for [the lent employee's] negligence in the performance of his work" when the special employer "exclusively controlled the particular service [the lent employee] performed at [the job site]." 186 Ariz. at 556, 925 P.2d at 697. In that case, the lent employee was employed by a labor broker and had been assigned to work at a special employer's job site pursuant to the labor broker's contract with the special employer. *Id.* at 554, 925 P.2d at 695. The labor broker was responsible for hiring and firing employees, paying their wages and workers' compensation insurance, requiring their compliance with the special employer's work rules, signing time records, and complying with equal employment opportunity laws. *Id.* at 555–56, 925 P.2d at 696–97. The labor broker also could reassign employees to other employers. *Id.* at 555, 925 P.2d at 696. In addition, its regional manager visited the special employer's job site twice a week to resolve employee problems. *Id.* The court concluded that the lent employee doctrine applied and that summary judgment should have been entered in favor of the general employer, the labor broker.

■ ¶ 7 It is a question of fact whether an employee continues as the general employer's servant or becomes the special employer's servant for a particular act. *Lee Moor*, 49 Ariz. at 135, 65 P.2d at 37; Restatement (Second) of Agency § 227 cmt. a. But summary judgment should be granted if the party opposing the motion has the burden of proof on an element at trial and has failed to present evidence creating a genuine issue of material fact as to that element. *Orme School v. Reeves*, 166 Ariz. 301, 310, 802 P.2d

1000, 1009 (1990). And a motion for summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* at 309, 802 P.2d at 1008.

¶ 8 Here, Ruelas produced evidence that Staff Builders exercised some administrative control over the nurses it provided to Posada del Sol. For example, under the contract with Posada del Sol, Staff Builders was responsible for ensuring the nurses were licensed and experienced, and for administering minimum competency tests, paying the nurses, providing workers' compensation and liability insurance, and orienting the nurses to Posada del Sol's expectations, fire and disaster program, dress code, and general nursing procedures. Staff Builders was also responsible for evaluating the nurses' performance, disciplining them, and terminating them.

¶ 9 But Ruelas produced no facts to support an assertion that Staff Builders actually controlled or had the right to control the manner in which the nurses gave the enema or performed any aspect of their work at Posada del Sol. Posada del Sol informed Staff Builders' nurses of their responsibilities and supervised Staff Builders' nurses to the same extent as its own nurses. And each of the Staff Builders' nurses involved here frequently worked at the facility. In addition, Posada del Sol could tell Staff Builders that it did not want a particular nurse to return to the facility. Posada del Sol employees also informed Staff Builders of events requiring discipline or termination. Moreover, Staff Builders' evaluations of the nurses' onsite performance were based on evaluations completed by Posada del Sol employees. Although Ruelas emphasized at oral argument that another Staff Builders' nurse supervised the two nurses, Ruelas presented no facts establishing that the supervising nurse was not also subject to Posada del Sol's control.

¶ 10 We find this case analogous to *McDaniel.* Although Staff Builders controlled the administrative aspects of the

nurses' employment, Ruelas proffered no evidence that it actually controlled how the nurses provided care to Ruelas or other patients. Nor did she proffer any evidence that Staff Builders had the right to control how her care was provided. In fact, Ruelas conceded at oral argument that, if we apply the specific control test in *McDaniel,* she could not prove Staff Builders actually controlled or had the right to control the nurses' activities at Posada del Sol. In contrast, Posada del Sol clearly had the right to control how Ruelas's care was provided. It provided the facilities, equipment, and paperwork the nurses used while caring for Posada del Sol's patients. Posada del Sol supervised the nurses and, as Ruelas stated at oral argument, it directed the nurses to perform specific medical procedures.

¶ 11 Ruelas argues, however, that *McDaniel* should be limited to cases where it is undisputed that exclusive control has been ceded to the special employer. Although Ruelas claims exclusive control is a disputed issue, exclusive control over all aspects of the employment relationship is not required under *McDaniel.* The focus is on which employer had the right to control the specific injury-causing activity. *McDaniel,* 186 Ariz. at 555–56, 925 P.2d at 696–97; *see also Lee Moor,* 49 Ariz. at 133, 65 P.2d at 36; Restatement (Second) of Agency § 227 cmt. a. Here, as in *McDaniel,* there was no evidence that the general employer had any control over the specific activity giving rise to the injury, a point Ruelas conceded at oral argument.

¶ 12 Finally, Ruelas also argues that we should abandon the specific-control test in *McDaniel* and adopt the "furthering-the-business" standard enunciated in the dissent in *McDaniel.* But the supreme court's decision in *Lee Moor* established control as the decisive factor. *Lee Moor,* 49 Ariz. at 136, 65 P.2d at 37–38 ("Control or right to control determines liability."). And we are bound by that precedent. *See City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (1993) (court of appeals bound by supreme court precedent and cannot "overrule, modify, or disregard" it). In any event, Ruelas has offered no sound policy rationale for departing from *McDaniel's*

specific-control test here. Ruelas had a relationship with Posada del Sol, not with Staff Builders. Violation of the duties arising from that relationship resulted in Ruelas's injuries. If, as Ruelas suggests, Staff Builders was negligent in the performance of its duties, it would be liable. But the liability would be direct, in the form of a negligent hiring or retention claim, not vicarious. And Ruelas stands in no worse legal position than if the nurses who abused her were directly employed by Posada del Sol; that employer remains vicariously liable for its agents' acts. Under these facts, therefore, we find no basis to depart from *McDaniel. See National Indem. Co. v. St. Paul Ins. Cos.*, 150 Ariz. 492, 493, 724 P.2d 578, 579 (1985), *approved in part and vacated in part on other grounds*, 150 Ariz. 458, 724 P.2d 544 (1986) (decision by other division of court of appeals is persuasive and "only the most cogent of reasons will justify a divergence between the two [divisions]").

¶ 13 Ruelas nonetheless contends that Staff Builders may have had joint control over the nurses' work activities. Two employers can be vicariously liable for an employee's actions if they both have joint control over performance of the employee's specific activities. *See McDaniel*, 186 Ariz. at 555–56, 925 P.2d at 696–97. But Ruelas has offered no evidence that Staff Builders had any control over the nurses giving of the enema or providing care to Ruelas. *See id.* at 555, 925 P.2d at 696 (although general employer had some control over employee, no vicarious liability because it had no control over performance of employee's duties at special employer's facility).

¶ 14 Given the quantum of evidence required, Ruelas has failed to create a genuine issue of material fact as to whether Staff Builders controlled or had the right to control the manner in which the nurses gave the enema to Ruelas or performed any aspect of their work at Posada del Sol. *See Orme School.* Accordingly, the trial court properly granted summary judgment to Staff Builders on the issue of vicarious liability. *See id.*

## PUNITIVE DAMAGES

¶ 15 Ruelas contends the trial court erred in finding that the nurses were functionally governmental employees and, therefore, were immune from punitive damages liability pursuant to A.R.S. § 12–820.04. We need not address that issue, however, because Ruelas argues that Staff Builders may be assessed punitive damages only if it "is jointly liable for acts committed by the nurses." But, as previously discussed, Staff Builders did not have joint control over the nurses giving Ruelas the enema. Thus, it was not jointly liable for the nurses' misconduct or vicariously liable for punitive damages assessed against them. *See McDaniel.* The trial court also properly granted summary judgment on this claim.

## NEGLIGENT HIRING/RETENTION

¶ 16 Ruelas claims the trial court erred in granting summary judgment to Staff Builders on her negligent hiring/retention claim. But Staff Builders could not be liable for negligently hiring the abusing nurses because it had not hired the individual nurses. Rather, it purchased the staffing agency eleven days before the incident and had not assumed any liability of the prior owner related to hiring the nurses. Ruelas contends, however, that Staff Builders was negligent in retaining one of the abusing nurses because it failed to contact her prior employer, who may have revealed that the nurse had been terminated for violating the "Patient's Bill of Rights." Ruelas has not presented any evidence, even from its own expert, that Staff Builders was negligent in failing to investigate the nurse before it purchased the staffing agency's assets or in the eleven days between the purchase and the abuse. And we agree with the trial court that Ruelas has not presented any evidence that, had an investigation been conducted, the prior employer would have actually provided information that could have resulted in Staff Builders terminating a nurse who had been employed by the staffing agency for three months. Given the quantum of evidence required, the trial court properly granted summary judgment on this claim. *See Orme School.*

## CONCLUSION

¶ 17 The trial court's order granting summary judgment to Staff Builders on Ruelas's claims against it for vicarious liability, punitive damages, and negligent hiring/retention is affirmed.

CONCURRING: ESPINOSA, C.J., and DRUKE, J.

